**In re The MINNELUSA COMPANY, a Florida Corporation, Debtor.**

Bankruptcy No. 94–539–9P1.

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

Sept. 29, 1994.

See also 169 B.R. 225.

David Steen, Tampa, FL, for debtor.

John D. Emmanuel, Tampa, FL, for creditors.

## ORDER ON MOTION TO VALUE COLLATERAL

ALEXANDER L. PASKAY, Chief Judge.

THIS is a yet-to-be confirmed Chapter 11 case and the matter under consideration is a Motion to Value Collateral filed by the Minnelusa Company (Debtor). In its Motion, the Debtor seeks a determination of the value of 1,500 shares of stock of the Debtor. The stock is allegedly pledged to a group of creditors of the Debtor, A.G. Andrikopoulos, George A. Seifert and John E. Dunn and Marjorie O. Dunn, as Trustees of the Dunn Trust (Creditors). The facts relevant to resolution of this controversy as established at the final evidentiary hearing are as follows:

The Debtor owns and operates the Deep Lagoon Marine, located in Fort Myers, Florida. Prior to the commencement of this case, the Debtor executed a promissory note in favor of each of the Creditors (Notes). The Notes were each secured by 500 shares of the Debtor's stock. The Debtor defaulted on these notes and the Creditors initiated lawsuits seeking a money judgment on the Notes. Judgments were ultimately entered in favor of the Creditors and against the Debtor in an aggregate amount of $544,-613.00.

On January 18, 1994, the Debtor filed its Petition for Relief under Chapter 11 of the Bankruptcy Code. On March 30, 1994, the Debtor filed its Motion to Value the 1,500 shares of stock which was held as collateral under the Notes. It is important to note that the Creditors have filed an unsecured proof of claim and have abandoned any interest in the 1,500 shares of stock. Under the Debtor's proposed Plan of Reorganization the Debtor intends to pay the Creditors' claims at least in part by issuing stock in the Reorganized Debtor.

▮ Valuation of this stock requires a determination of what a willing buyer would pay for the stock the Creditors will receive under the Plan. "The goal is to determine, on a case-by-case basis, the approximate price at which the property of the debtor would change hands between an informed

seller and buyer. Such an analysis presumes that neither the buyer nor seller is under compulsion to sell, and that both are reasonably informed as to all relevant facts." *National Rural Utilities v. Wabash Valley Power*, 111 B.R. 752 (S.D.Ind.1990). To make such a determination, the Court must consider relevant market factors and should utilize a conservative valuation standard. *Matter of Sandy Ridge Development Corp.*, 881 F.2d 1346 (5th Cir.1989); *In re Evans Products Co.*, 65 B.R. 870 (S.D.Fla.1986).

The Debtor contends that the stock is worth $547.97 per share. In support of its proposition, the Debtor presented two expert witnesses, Mr. Scott and Mr. Christopher. According to the Debtor's experts, valuation of the Debtor's stock requires a separate valuation of the Debtor's real estate and business operations. The Debtor's real estate is made up of one parcel upon which the Debtor operates the Deep Lagoon Marina. A second parcel is referred to as the Excess Land, and is primarily vacant land. Mr. Scott appraised the Deep Lagoon Marina parcel at $4.2 million and the Excess Land parcel at $3 million, for a total value of the real estate of $7.2 million.

Next, the Debtor's expert, Mr. Christopher valued the Debtor's business operations. Mr. Christopher divided the Debtor's business operation into five separate operations:

1) Rental Income

2) Sales, Parts and Service

3) Fuel and Dock

4) Consignment and Brokerage Sales

5) New Boat Sales—Joint Venture

Mr. Christopher did not take the rental income portion of the business into account because he considered it having been included in the value of the real estate through the use of the income approach in determining the value of the real estate. Mr. Christopher valued each business operation separately through the income approach and determined that the value of the four operations is $485,000.00.

Furthermore, the Debtor established through its general manager that the Debtor currently has $96,000.00 in accounts receivables and $30,000.00 cash on deposit in bank accounts maintained by the Debtor. The total liabilities of the Debtor were, at the commencement of this case, $4,078,261.00. Based upon the foregoing, the net value of the Debtor's assets is $3,732,733.00. Taking into account that 6,812 shares of the Debtor's stock is outstanding, not taking into account the shares held in escrow pursuant to the Notes, a per share value of the Debtor's stock based upon the value of the Debtor's assets, according to the Debtor, would be $547.97.

In contrast, the Creditors place a per share value upon the stock at $115.18. This conclusion was arrived at by valuing the Debtor's assets, again appraising the real estate separate from the business operations, and netting out liabilities to arrive at a $2,454,677.00 value for the Debtor's assets. No value was placed upon the business operations of the Debtor because these operations have always operated at a loss. This value was then divided by the 8,312 outstanding shares, which number includes the shares held in escrow under the Creditors' Notes, resulting in a $295.32 per share value.

However, at this point, the Creditors' expert testified that it was necessary to discount the per share value based upon the minority position each of the Creditors held within the Debtor corporation. Each of the 500 shares to be issued to each Creditor only represents 6% of the total outstanding shares of the corporation. According to the Creditors, such a situation requires a discount of the value of the shares because the minority shareholder cannot control the management of the corporation. The Creditors' expert placed a discount of 35% upon the value of the shares.

In addition, the Creditors' expert placed a further discount of 40% upon the value of the shares for the lack of marketability of the shares. Because of the closely-held stature of the corporation, together with the currently pending Chapter 11, the declared no dividends in the last several years and the $450,-000.00 loss suffered by the corporation in years 1992–1993, the Creditors' expert concluded that a 40% lack of marketability discount was appropriate. By applying these discounts sequentially to the $295.32 per

share value, the Creditors place a per share value on the stock at $115.18.

 Presented with the conflicting valuations of the experts, it is important to take into consideration the qualifications of the respective experts. This Court notes that Mr. Christopher, the expert for the Debtor, has little formal training in appraising specific property or the going concern of businesses, nor does he hold any certification or accreditation for appraisal. Furthermore, this Court is satisfied that it is inappropriate to appraise the business operations based upon the limited actual figures for 1994, annualized for the future rather than utilizing the actual empirical performance of the business, which would be more meaningful to a prospective buyer of the stock.

 In addition, this Court is satisfied that it is appropriate to consider the minority position and the lack of marketability of this stock and appropriately discount the values of the stock based upon these factors. Finally, an important factor in calculating the value of these shares is the number of shares to be considered in the calculation. The Debtor contends that the shares held in escrow should not be considered in the calculation. This Court disagrees, for two reasons. First, the Creditors have renounced any interest they may have held in the stock pledged as collateral to their Notes. Second, the Plan of Reorganization contemplates issuance by the Debtor of new stock. Based upon this record, the Court is constrained to conclude that the same number of shares will be issued in new stock as had been issued prior to the commencement of this case. Based upon the foregoing, this Court is satisfied that the proper calculation of the value of the stock utilizes the total number of shares issued, without excluding those shares held in escrow to secure the Notes held by the Creditors, i.e. 8,312. Therefore, using the figure of 8,312 outstanding shares of stock, this Court is constrained to accept the value suggested by the Creditors' expert of $115.18 as the more reliable value.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion to Value Collateral filed by the Debtor is hereby granted and the value of the collateral is determined to be $115.18 per share.

DONE AND ORDERED.